LYDIA H. AMOS

*v.*

S. BUDD NORCROSS.

[Filed April 24th, 1899.]

1. When the complainant's title to the property threatened with injury, appears on the face of the bill and accompanying affidavits to be defective, a preliminary injunction will not be allowed.

2. Title to lands in New Jersey which lie between mean high and low-water mark, is in the State of New Jersey. An owner of lands lying adjacent to the shore, who has not acquired the state's title to the shore in the mode prescribed by the riparian acts, is not the owner of the shore, and will not be allowed an injunction to restrain the removal of a wharf resting upon piling driven in the shore, through and over which the tide flows.

On bill, &c. Order to show cause.

*Mr. Edward A. Armstrong,* for the complainant.

*Mr. Mark R. Sooy* and *Mr. Samuel Atkinson,* for the defendant.

GREY, V. C.

The complainant filed this bill solely for the purpose of obtaining an injunction to stay the removal of a wharf built upon piling set down between high and low-water mark on a tide-water stream, which wharf the defendant, it is admitted, is about to remove, and which he claims the right to remove. Under such circumstances, seeking such relief, the burden is upon the complainant to show here an established right to the wharf, or that her title is free from reasonable doubt, and that the proposed acts of the defendant will cause an irreparable injury not adequately remediable at law.

The wharf in question is a structure admittedly built entirely of timber, through and under which the tides flow, as it is not filled in, and lying wholly between mean high and low-water

mark, save as some timbers of the superstructure of the wharf may reach across above mean high-water mark and rest upon blocks which lie there.

There is no proof of any contractual right of the complainant in this wharf. Nobody sold it to the complainant, nobody built it for the complainant, and the only right the complainant asserts in the structure rests wholly upon her claim that she is the owner of the land on which the wharf is constructed. She alleges that upon a surrender of a lease of that land, which she made to a former tenant in 1896, the wharf passed to and became vested in her as owner, because it was necessarily, by reason of its substantial structure, a part of the freehold which she say she owns. There is no averment that the tenant had acquired any title from the state, nor that the complainant ever received any such title.

The strip of land upon which this wharf stands is between mean high and low-water mark, and it is recognized and settled law in the State of New Jersey that the title to lands between mean high and low-water mark stands in the state. It is hardly necessary to discuss or refer to the many cases which have established this doctrine, which is no longer open to question.

The final determination of our highest court has declared that the proprietors of New Jersey, under whom the complainant must derive title, never received by the grants from the Duke of York any property in the soil of the navigable waters of the state lying within the ebb and flow of the tide, and that the title of the state as sovereign, is absolute. *Stevens* v. *Paterson Railroad Co.*, *5 Vr. 537*. Before there was any statutory regulation on the subject, the owner of the ripa could, under the local custom of this state, obtain and sustain a title adverse to that of the state by reclaiming the soil under water by filling in and excluding the tide. *Gough* v. *Bell*, *2 Zab. 441*. But after the passage of the Wharf act of 1851 (*P. L. of 1851 p. 335*), it became necessary for the riparian owner to obtain a license from the board of freeholders of the county in which the lands were located, before building his wharf, and finally the Riparian act of 1869 (*P. L. of 1869 p. 1017*) and its various supplements,

17

have prescribed the mode whereby alone the riparian owner can acquire the title to the state's tide-water lands, by application to the riparian commission and the obtaining of a grant or lease. The effect of these statutory regulations, and of the decisions upon the subject, has been to leave the riparian owner little more than the privilege of holding the accretions, and of passing directly from his property on to the shore, the right to apply to the riparian commission for a grant or lease of the shore, and in case anyone else applies for a grant of the same premises, to be notified of that fact. But the bill does not allege interference with any of these rights. What the complainant claims is that the structure in question is a permanent addition to the freehold, that she is the owner of that freehold, and therefore has a right to have it protected.

It is well settled that an injunction will not be granted where the right of the complainant depends upon a disputed and doubtful question of law. *Citizens Coach Co.* v. *Camden Horse Railway Co., 2 Stew. Eq. 305.* In the case before me the proofs show that the title of the complainant to the wharf sought to be protected by injunction, is not only doubtful, but is indeed rather demonstrated to be invalid. There is an allegation of ownership and possession, but she herself insists that the wharf structure is of the nature of real estate, and is a part of the free-hold; and it cannot be ignored that whatever title the complain-ant asserts rests upon her claim that she owns the lands whereon the wharf structure stands, which are covered by the flow of the tide. In these lands, in the absence of some grant or lease from the state (and none is alleged), she can have neither ownership nor possession, and consequently cannot invoke any remedy as against a trespasser or wrongdoer who threatens to remove a structure therefrom. It was expressly declared in *Stevens* v. *Paterson Railroad Co., 5 Vr. 543,* that the riparian owner has no right by reason of such ownership to the use of the shore.

The complainant insists that the rule in question should not be applied where it appears that if the defendant be not enjoined, the subject-matter of the suit may be destroyed and the com-plainant be deprived of all chance of relief on final hearing.

If such a case were made by the complainant, and she showed on the face of her bill a right to the relief sought, and the doubts or uncertainty were created by defendant's counter-claim, the argument would have force. But in this case the difficulty in affording relief arises upon the case made by the complainant herself, whereby it appears that she has no more right to inter-fere in the matter of the destruction threatened than the owner of one lot has to ask an injunction to restrain an intending trespasser from tearing down a building on an adjoining lot, title to which is held by another person.

There is no allegation that the defendant is insolvent and unable to respond in damages, and it does not appear if the complainant has any rights in the premises, that she may not have an adequate remedy at law.

The order to show cause should be dismissed, with costs.